811 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re WARREN ESTATES MOBILE HOME PARK, INC., Debtor,
Frederick A. PETZ, Oakwood Properties, Inc., Plaintiffs-Appellants,
v.
Robert S. HERTZBERG, Defendant-Appellee.
 No. 86-1526.
 United States Court of Appeals, Sixth Circuit.
 Dec. 29, 1986.
 
 Before GUY, Circuit Judge, PECK, Senior Circuit Judge, and EDGAR, District Judge.*
 PER CURIAM.
 
 
 1
 Frederick A. Petz, the successful bidder at a bankruptcy sale appeals to this court requesting the return of his deposit and the nullification of the bankruptcy sale. For the reasons stated below, the ruling of the district court upholding the bankruptcy court's order of forfeiture of Petz's deposit is affirmed.
 
 
 2
 The dispute in the instant case involves the ownership of a vendee's interest in a land contract for a mobile home park. This vendee's interest was the primary asset of the debtor, Warren Estates Mobile Home Park, Inc., which acquired the interest from its sole shareholder, Jean Lambertz, by assignment. This assignment was not recorded. The shareholder had obtained her interest by a previous assignment from her husband, Warner Lambertz. This assignment was also unrecorded.
 
 
 3
 On or about April 27, 1983, debtor corporation filed for relief under Chapter 11 of the United States Bankruptcy Code. The bankruptcy proceedings were subsequently dismissed after Mr. and Mrs. Lambertz assured the bankruptcy court that all the creditors would be paid in full. The debtor corporation defaulted on its promise to pay creditors and on January 3, 1985, filed a second petition for relief under Chapter 11. Once again, these proceedings were dismissed in reliance on the promises of Mr. and Mrs. Lambertz. On April 1, 1985, the debtor corporation filed under Chapter 11 for the third time, however, the proceedings were subsequently converted to a Chapter 7 liquidation.
 
 
 4
 Petz made a private offer to purchase the mobile home park from the bankruptcy trustee. The trustee rejected his offer and received authority from the bankruptcy court to sell the property at public auction. The sale was scheduled for December 3, 1985. A few days before the sale, Petz approached Mr. and Mrs. Lambertz and entered an agreement to purchase 100 percent of the debtor corporation's stock for the sum of $50,000. As the new sole shareholder of the debtor corporation, Petz brought a motion before the bankruptcy court to convert the liquidation proceedings back to a Chapter 11 reorganization. On November 25 and 26 the bankruptcy court held hearings on the motion which resulted in the denial of Petz's motion.
 
 
 5
 At the public sale, the trustee received an offer of $570,000 for the property. Petz, however, was the highest bidder with a bid of $600,000. Petz placed $100,000 in escrow as a deposit. After placing the deposit, Petz allegedly discovered that the assignment of the vendee's interest in the land contract to the corporation had not been recorded. Petz immediately contacted Mr. and Mrs. Lambertz and informed them that they were in violation of the stock agreement which had stated that the corporation owned a vendee's interest in the land contract for the mobile home park. Pursuant to an indemnification clause in the stock agreement, Petz forced the shareholder and her husband to execute an assignment of their vendee's interest in the property and a quit-claim deed to Oakwood Properties, Inc. ("Oakwood"). Petz identified Oakwood as his real estate agent. Petz then recorded these conveyances and moved the bankruptcy court to set aside the public sale. Petz argued that the trustee could not convey marketable title because the original corporate shareholder had not recorded the assignment of the vendee's interest in the land contract to the corporation. Petz further argued that Oakwood Properties was now the rightful owner of the mobile home park by virtue of the recent recorded assignment from the original shareholders.
 
 
 6
 On February 3, 1986, the bankruptcy court found inter alia, that the trustee held marketable title as the land contract vendee, that Petz's post-bankruptcy transactions had no legal effect, and that the trustee's claim to the property was superior to that of Oakwood's. The bankruptcy court denied Petz's objections and ordered him to close the purchase in 30 days or forfeit his deposit. Petz and Oakwood appealed the order to the district court. On May 30, 1986, the district court dismissed the cause of action and affirmed the order of sale. In order to give Petz an opportunity to appeal, the district court stayed the trustee from selling the Park until June 3, 1986, and stayed the forfeiture of Petz's deposit until June 10, 1986. This oral order was reconfirmed by a written order dated June 11, 1986.
 
 
 7
 On June 6, 1986, Petz and Oakwood appealed. In mid-August, the trustee again attempted to sell the property and Petz moved for an injunction. On September 18, 1986, the district court denied Petz's motion to enjoin the sale and refused to grant a further stay of the forfeiture of his deposit. A public sale was scheduled for September 23, 1986, at 9:00 a.m. On September 22, 1986, this court issued a temporary stay in order to allow Petz to bring an emergency appeal. This court subsequently ordered that the stay on the sale would be lifted after October 6, 1986, unless appellants posted a supersedeas bond in the amount of $500,000, that being the remaining balance of the purchase price. This court also ordered that Petz's $100,000 deposit remain in trust until the parties had an opportunity for a hearing.
 
 
 8
 Petz failed to post the $500,000 bond and on October 8, 1986, the district court denied a further motion to stay the sale of the property. On November 11, 1986, the trustee sold the property to a third party. Therefore, the only issue remaining before this court is the potential forfeiture of Petz's $100,000 deposit which is currently held by the trustee. In essence, Petz and Oakwood claim that the trustee did not have marketable title to the property; and therefore, the sale should be set aside and the $100,000 deposit returned.
 
 
 9
 First, Petz asserts that Oakwood's claim to the property is superior to that of the trustee's by virtue of the recorded assignment from the original shareholders to Oakwood made pursuant to the indemnification clause in the stock sale agreement between Petz and the original shareholders.
 
 
 10
 Under Michigan law, an unrecorded conveyance of real estate is "void as against a subsequent purchaser in good faith" for consideration whose conveyance is recorded first. Mich.Comp.Laws Ann. Sec. 565.29 (West 1967). This priority applies to conveyances involving land contracts. Mich.Comp.Laws Ann. Sec. 565.345. However, the conveyance, although unrecorded, remains good as between the parties. See Evans v. Holloway, Sand and Gravel, Inc., 106 Mich.App. 70, (1981). So, even though the conveyance from a shareholder to a corporation was unrecorded, the conveyance was superior to all claims other than that of a bona fide purchaser in good faith. Under Michigan law, one cannot claim to be a bona fide purchaser without notice if one has actual notice of competing claims or is aware of facts which would lead a reasonable man to make further inquiries. See Lakeside Associates v. Toski Sands, 131 Mich.App. 292 (1983).
 
 
 11
 In the instant case, Petz clearly had notice of the trustee's claim to the property since Petz had agreed to buy the property from the trustee. Petz's knowledge of the trustee's claim to the property should be imputed to his real estate agent, Oakwood, which attempted to acquire the property on Petz's behalf. Therefore, Oakwood is not a subsequent purchaser without notice. Under Michigan's race/notice recording scheme, Oakwood's claim is inferior to that of the trustee, even though it recorded first, because Oakwood had notice of the trustee's prior claim. Thus, both the bankruptcy court and the district court correctly concluded that Oakwood's claim to the property did not prevent the trustee from conveying title at the public sale to Petz.
 
 
 12
 The second basic challenge to the validity of the sale involves the manner in which the Park came under the trustee's control. Petz contends that a vendee's interest in a land contract is a contingent interest in an executory contract. Under 11 U.S.C. Sec. 365(d)(1), a trustee must affirmatively assume a executory contract within 60 days of the order for relief in order for the contract to be included in the property of the estate. Petz contends that the trustee did not formally assume the executory contract involving the debtor's interest in the Park. Therefore, Petz concludes, the Park did not become part of the estate and the trustee could not sell it at auction.
 
 
 13
 Relying on Michigan property law, the Bankruptcy Court for the Eastern District of Michigan has recently held that a land contract is not an executory contract for purposes of 11 U.S.C. Sec. 365. In re Britton, 483 Bankr. 605 (E.D.Mich.1984). In support of this conclusion, bankruptcy Judge Spector quoted from the Michigan Supreme Court case of Barker v. Klinger, 302 Mich. 282, N.W.2d 596 (1942), wherein the Supreme Court stated:
 
 
 14
 It is well settled in this State that the vendee in a land contract is vested with the equitable title in the land and that the legal title remains in the vendor and is held as security for the payment of the purchase price of the land,....
 
 
 15
 302 Mich. at 288 (quoted in Britton, 43 Bankr. at 607).
 
 
 16
 Therefore, Judge Spector held that since the land contract was not an executory contract, the trustee was not required to take any affirmative action to preserve the vendee's interest for the benefit of the estate. 43 Bankr. at 608. See also In re Reich, 54 Bankr. 995, 1003 (E.D.Mich.1985).
 
 
 17
 In the instant case, the district court also held that under Michigan law the land contract was not an executory contract. We are unable to find fault with this interpretation of Michigan law. Moreover, we fail to see how Petz could be harmed by the trustee's failure to formally assume the alleged contingent obligation where, as in this case, the vendor of the land contract repeatedly offered to cooperate with the trustee in the sale of the entire property in fee simple.
 
 
 18
 Thus, we conclude that the vendee's interest in the land contract was properly part of the estate; and therefore, the trustee had the authority to dispose of this interest at public sale.
 
 
 19
 Having rejected the two main challenges to the trustee's title, we also affirm the bankruptcy court's ruling that the trustee had marketable title.
 
 
 20
 Under Michigan law, a title is not marketable if a reasonably prudent man familiar with the facts would refuse to accept title in the ordinary course of business. Bartos v. Czerwinski, 323 Mich. 87 (1948). In the instant case, the trustee has offered, in cooperation with the land contract vendor, to convey a warranty deed in fee simple together with title insurance. The record reveals that several parties have offered to buy the property from the trustee and that on each occasion, Petz has prevented the sale by either outbidding the party or by obtaining an injunction against the sale. Based on these facts, we reach the same conclusion as did the bankruptcy court regarding the marketability of the title.
 
 
 21
 The bankruptcy court determined that the trustee was able to convey marketable title, and ordered Petz to complete the sale or forfeit his deposit. The district court affirmed this decision and again ordered Petz to complete the sale. This court dissolved the stay against the public sale on October 6, 1986, after Petz failed to post a bond for the balance of the sale price. The public sale finally occurred on November 11, 1986, at which time a third party purchased the property. Throughout this entire period, from the initial public sale on December 3, 1985, at which Petz was the high bidder, until October 6, 1986, the trustee stood willing to complete the sale. Petz could have paid the balance of the purchase price and obtained the property without sacrificing his $100,000 deposit. Meanwhile, the creditors of the estate remained unpaid and the physical condition of the property continued to deteriorate. Under these circumstances, there is ample justification for the forfeiture of Petz's deposit.
 
 
 22
 Therefore, the $100,000 deposit held by the trustee is hereby declared forfeit and the principal and interest is granted to the estate of the debtor corporation. The decision of the district court refusing to nullify the sale is AFFIRMED.
 
 
 
 *
 Honorable R. Allan Edgar, United States District Court, Eastern District of Tennessee, sitting by designation